ANDREWS *v.* HOVEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Submitted January 16, 1888. — Decided February 20, 1888.

The decision of this court in *Andrews* v. *Hovey*, 123 U. S. 267, adjudging reissued letters-patent No. 4372, granted to Nelson W. Green, May 9, 1871, for an "improvement in the method of constructing artesian wells" to be invalid, confirmed, on an application for a rehearing.

The case of *Kendall* v. *Winsor*, 21 How. 322, and other cases examined.

The question of the proper construction of the second clause of § 7 of the patent act of March 3, 1839, 5 Stat. 354, as affecting the validity of a patent, considered.

THIS was a petition for a rehearing of the case, decided at this term and reported in 123 U. S. at page 267. The allegations and prayer of the petitioners were as follows :

Petition for Rehearing.

"And now come your petitioners, the appellants herein, by their counsel, Joseph C. Clayton and Anthony Q. Keasbey, and respectfully suggest to this Honorable Court that, after having sustained the priority and novelty of the invention and the validity of their original patent and its reissue in numerous decisions of the Circuit Courts and in three decrees of this court, they are much aggrieved by the opinion lately rendered in this court (123 U. S. 267), declaring it to have been void *ab initio*, under the Patent Acts of 1836 and 1839, because it was admitted that subsequent to the invention and prior to the application *others*, without the consent or allowance of the inventor, had used the invention in public for more than two years.

"And your petitioners respectfully suggest that this decision as to the construction of those acts was reached by reason of a plain omission and mistake as to the facts and authorities, and by the failure of counsel, in their abundant confidence in what they deemed a long-settled construction, to bring to the notice of the court in sufficient fulness the authorities by which such construction had been uniformly maintained, and to explain distinctly that their admission as to prior use related to the use of only a few wells made solely by Suggett and Mudge, who derived their knowledge from the inventor, and were afterwards defeated as contestants in an interference with Green concerning the patent in question.

"Wherefore your petitioners respectfully pray for a reconsideration and rehearing on the following grounds, supported by their brief submitted herewith:

"*First.* The court, in the present opinion, holds that the first clause of the 7th section of the act of 1839 protects any person who has purchased or constructed a specific machine before application for the patent, whether it was purchased or constructed with the consent of the inventor or not, and that *therefore* the second clause of the section invalidating the patent, if *such* use in public continued two years before the application, must be construed to mean a use whether with the consent of the inventor or not; and, in reaching this conclusion, the court declared that '*the question involved had*

*never been decided by this court.'* This was a plain mistake, probably arising out of the failure of counsel to refer to the cases. It had been decided by this court the other way in four well-considered cases, viz.: *Kendall* v. *Winsor,* 21 How. 322; *Seymour* v. *McCormick,* 19 How. 96; *Klein* v. *Russell,* 19 Wall. 433; *Bates* v. *Coe,* 98 U.. S. 31, 46; and in *McClurg* v. *Kingsland,* 1 How. 202. The charge of Mr. Justice Baldwin at the Circuit Court, taking the same view of the statute, was affirmed, although the decision of this court rested on another point.

"*Second.* The court in its opinion (page 269) declares that in *Andrews* v. *Carman,* 13 Blatchford, 307, the first driven-well case, 'the question of the use of his invention by others more than two years prior to his application does not appear to have been raised.'

"This was a plain error of fact, and the court was naturally and inadvertently led into it by a clerical error in the printed opinion of Judge Benedict, as will be fully explained in the brief. The question *was* raised. The same facts as to prior use admitted here, were proved there and fully considered, and the construction of the statute contended for, distinctly approved.

"*Third.* Being under the erroneous impression that this court had not construed the section, and that the construction of it had not arisen in the other driven-well cases, the court, in construing it, omitted to give due weight to the unbroken current of executive and judicial authority in favor of the construction upon which the appellants so confidently relied that they did not deem an oral argument on the point necessary.

"They now beg leave to refer to their brief in support of the assertion that from 1839 to the decision of this case at the Circuit Court the construction of the section making the consent and allowance of the inventor to a use of more than two years necessary in order to invalidate the patent has been uniformly acted upon by the Patent Office in promulgating its rules and making its grants to inventors under them, and has been sustained in very numerous opinions by the following justices of this court, viz., Justices Woodbury, Story, Baldwin,

Grier, Nelson, Clifford, Daniel, Curtis, and Blatchford, and by the following judges of the Circuit Courts, viz., Judges Woodruff, Shepley, Lowell, Blatchford, Benedict, Drummond, Nelson, Dillon, and Wheeler, and by the following judges of the Supreme Court of the District of Columbia, viz., Judges Cranch, Morsell, Merrick, Dunlop, and Fisher, and by the long line of Patent Commissioners from 1839 to 1870, and has been recognized by all text-books and counsel learned in patent law.,

"*Fourth.* The principles laid down by this court in a number of decisions within a few years past (referred to in the brief) in applying the doctrine of *stare decisis* to the construction of statutes would, as your petitioners respectfully but confidently suggest (if attention had been properly called to the great and uniform current of authorities upon it and the extent to which private rights granted under it have reposed upon confidence in its permanency), have led the court, whatever might have been its own view of this section, to have left its long-settled construction undisturbed; and that the rule laid down in *United States* v. *Pugh*, 99 U. S. 265, would have been followed, in which case it was said, as to the construction of a statute:

"'While, therefore, the question is one by no means free from doubt, we are not inclined to interfere at this late day with a rule which has been acted upon by the Court of Claims and the *executive* for so long a time.'

"*Fifth.* The counsel of your petitioners, in their confidence in this construction so long settled, failed to explain to the court, in making their admission as to use, that it was not at all a general use by others, but only the use of a few wells in the town where Green made the invention, by Lieutenant Mudge, a subordinate of his regiment, and Mudge's hired man, Suggett, who derived knowledge through Green's experiments, and who were afterwards defeated in the Patent Office as contestants with him, upon full proof of the public use they had made without his consent or knowledge, and that that use was *surreptitious* and a piracy of his invention.

"*Sixth.* The construction of the section, as now made by the court, overthrowing the uniform decisions which your petitioners now submit for consideration, would produce the evils

and hardships pointed out in the decisions cited, and would, in the case of all patents governed by the act of 1839, cause all specific articles *surreptitiously* made before application to be protected, and all patents to be invalidated by two years' use by a pirate of the invention, contrary to equity, and to the real object of the statute as defined in all the cases in which it has been construed ; whereas not even under the present act can the patentee be deprived of his franchise by a surreptitious prior use.

"*Seventh.* The counsel of your petitioners, still relying too confidently on the settled construction of the section, wholly omitted to point out to the court, that said statute does not apply to Green's patent at all, which is for a 'process,' but only to tangible specific *articles* capable of being constructed, used, or sold by delivery ; and they neglected to refer the court to the authorities sustaining this position, which they now do in the brief submitted.

"*Eighth.* The counsel for appellants referred the court to its statement in *Manning* v. *Isinglass Co.*, 108 U. S. 462, that the 'statute of 1836, 5 Stat. 117, § 6, did not allow the issue of a patent when the invention had been in public use or on sale for any period, however short, with the consent or allowance of the inventor ; and the statute of 1870, 16 Stat. 201, § 24, does not allow the issue when the invention has been in public use for more than two years prior to the application, either with or without the consent or allowance of the inventor.'

" They regarded this as clearly showing the view of this court that this important change was made by the general revision of 1870 and not by the mere additional act of 1839, and they did not think it necessary to verify it by reference to the legislative records.

" A careful examination of those records discloses the fact that this statement, made by Mr. Justice Woods, was strictly correct ; that the Congress in making the revision of 1870 regarded the then existing law as requiring consent or allowance, and deliberately made the change.

" If this be true, the present construction of the section is inconsistent with the view of the court in the Isinglass case, and with the legislative view in the revision of 1870.

" To the end, therefore, that equity may be done, and that this court may, upon fuller consideration, and with the advantage of oral argument, revise its former opinion (if revision be right and proper) your petitioners pray that the court may be pleased to take their suggestions under careful consideration, and grant a rehearing upon the points upon which said decision was based, and grant such other relief and order as in equity and good conscience may be proper.

" Newark, N. J., January 16, 1888.

" Joseph C. Clayton,
Anthony Q. Keasbey,
*Of Counsel with Appellants.*"

*Mr. Clayton* and *Mr. Keasbey* filed a brief in support of the petition, in which they cited: *A.* Cases cited in their former brief: *Pierson* v. *Eagle Screw Co.,* 3 Story, 402; *Pitts* v. *Hall,* 2 Blatchford, 229, 235; *American Hide & Leather Co.* v. *American Tool Co.,* 4 Fish. Pat. Cas. 284; *Andrews* v. *Carman,* 13 Blatchford, 307; *Andrews* v. *Cross,* 19 Blatchford, 294; *Ryan* v. *Goodwin,* 3 Sumner, 514; *Elizabeth* v. *Nicholson Pavement Co.,* 97 U. S. 126; *Consolidated Fruit Jar Co.* v. *Wright,* 94 U. S. 92; *Manning* v. *Cape Ann Isinglass Co.,* 108 U. S. 462; *McMillin* v. *Barclay,* 5 Fish. Pat. Cas. 189: *B.* Cases not cited in their former brief: *Henry* v. *Francestown Soapstone Co.,* 5 B. & A. Pat. Cas. 108; *Davis* v. *Fredericks,* 21 Blatchford, 567; *Brickill* v. *Mayor &c. of New York,* 18 Blatchford, 273; *Henry* v. *Francestown Soapstone Co.,* 2 B. & A. Pat. Cas. 221; *Agawam Co.* v. *Jordan,* 7 Wall. 583, 607; *Jones* v. *Sewall,* 3 Cliff. 563; *Godfrey* v. *Eames,* 1 Wall. 317; *McCool* v. *Smith,* 1 Black, 459; *Henry* v. *Providence Tool Co.,* 3 B. & A. Pat. Cas. 513; *Smith & Griggs Co.* v. *Sprague,* 123 U. S. 249; *Sargent* v. *Seagrave,* 2 Curtis, 553; *Kendall* v. *Winsor,* 21 How. 322; *Klein* v. *Russell,* 19 Wall. 433; *Jenkins* v. *Eldredge,* 3 Story, 181, 299; *Wright* v. *Sill,* 2 Black, 544; *Bates* v. *Coe,* 98 U. S. 31; *Evans* v. *Jordan,* 1 Brock. 248; *S. C.* 9 Cranch, 201; *Douglass* v. *Pike County,* 101 U. S. 677; *Boyd* v. *Alabama,* 94 U. S. 645; *McKeen* v. *De Lancey,* 5 Cranch, 22; *Brown* v. *United States,* 113 U. S. 568; *The*

*Laura,* 114 U. S. 411; *Heath* v. *Hildreth,* 1 MacArthur, Pat. Cas. 12, 20; *Arnold* v. *Bishop,* 1 MacArthur, Pat. Cas. 27, 34; *Hunt* v. *Howe,* 1 MacArthur, Pat. Cas. 366, 373; *Rugg* v. *Haines,* 1 MacArthur, Pat. Cas. 420; *Mowry* v. *Barber,* 1 MacArthur, Pat. Cas. 563; *Carroll* v. *Gambrill,* 1 MacArthur, Pat. Cas. 581; *Ellithorp* v. *Robertson,* 1 MacArthur, Pat. Cas. 585; *Blackinton* v. *Douglass,* 1 MacArthur, Pat. Cas. 622; *Wickersham* v. *Singer,* 1 MacArthur, Pat. Cas. 645; *Savary* v. *Lauth,* 1 MacArthur, Pat. Cas. 691; *Spear* v. *Belson,* 1 MacArthur, Pat. Cas. 699; *Hovey* v. *Stevens,* 1 Woodb. & Min. 290; *McClurg* v. *Kingsland,* 1 How. 202; *Sanders* v. *Logan,* 2 Fish. Pat. Cas. 167; *Howes* v. *McNeal,* 3 B. & A. Pat. Cas. 376; *Draper* v. *Wattles,* 3 B. & A. Pat. Cas. 618; *Campbell* v. *Mayor &c. of New York,* 20 Blatchford, 67; *McCormick* v. *Seymour,* 2 Blatchford, 240; *S. C.* on appeal, 19 How. 486; *Kelleher* v. *Darling,* 4 Cliff. 424; *Graham* v. *McCormick,* 5 B. & A. Pat. Cas. 244.

*Mr. George Ticknor Curtis* filed a supplemental brief for petitioners.

*Mr. Albert H. Walker* filed suggestions in support of petitioners.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a petition by the appellants in the case of *Andrews* v. *Hovey,* reported in 123 U. S. 267, for a rehearing of that case upon the points upon which the decision was based.

The suit was a suit in equity, brought by the appellants for the infringement of reissued letters-patent No. 4372, granted to Nelson W. Green, one of the appellants, May 9, 1871, for an "improvement in the method of constructing artesian wells," the original patent, No. 73,425, having been granted to said Green, as inventor, January 14, 1868, on an application filed March 17, 1866. The Circuit Court had dismissed the bill on the ground of the invalidity of the patent. The plaintiffs appealed, and this court affirmed the decree. In its opinion, it was said: "The patent is famil-

iarly known as the driven well patent. The specifications and drawings of the original and reissued patents are set forth in the opinion of this court in *Eames* v. *Andrews*, 122 U. S. 40. Numerous defences are set up in the answer in the present case, and voluminous proofs have been taken in respect to those defences; but it, is necessary to consider only one of them, which in our view is fatal to the validity of the patent, and that is, that the invention was used in public, at Cortland, in the State of New York, by others than Green, more than two years before the application for the patent. The brief of the appellants concedes that it is shown in this case that other persons than Green put the invention into public use more than two years before his application was filed. It is contended for the appellants that this was done without his knowledge, consent, or allowance. The appellee contends that such knowledge, consent, or allowance was not necessary in order to invalidate the patent, while the appellants contend that it was necessary. The whole question depends upon the proper construction of § 7 of the act of March 3, 1839, 5 Stat. 354, interpreted in connection with §§ 6, 7, and 15 of the act of July 4, 1836, 5 Stat. 119, 123." 123 U. S. 269.

Our decision was, that the patent was invalid, because the invention covered by it had been in public use more than two years before Green applied for the patent, without reference to the question whether he consented to such use or not. The views which led to this conclusion were set forth at length in the opinion, and a further consideration of them, in the light of the arguments presented on this application for a rehearing, has only served to confirm us in the conviction that they were correct. But, as the briefs of counsel in support of the application proceed upon the ground that certain views and authorities, which they think bear upon the question involved, were not presented to us upon the original hearing, we deem it proper to state the reasons for our adherence to our conclusion.

The main proposition urged by the counsel for the appellants is, that the question involved was adjudged by this court in accordance with their views, in the case of *Kendall* v. *Winsor*, 21 How. 322, decided in 1858. In the same connection,

other authorities, which, it is alleged, were not cited by counsel on the former hearing, are presented. It is also urged, that the court omitted to give due weight to what is said to be the current of executive and judicial authority in favor of the construction upon which the appellants rely; and that the 7th section of the act of 1839 does not apply to the patent in question, because it is a patent for a process.

The question involved arises upon the second clause of § 7 of the act of 1839, which section was in these words: "That every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application of the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture, or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in such invention; and no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public; or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent."

This section contains two clauses, all that precedes the first semicolon being the first clause, and all that comes after the first semicolon being the second clause. The first clause relates to the right of a person, as against a suit by the patentee for infringement, to use and sell the specific machine, manufacture, or composition of matter purchased or constructed prior to the application for the patent, and the use of which would otherwise be a violation of the patent. The second clause relates to the effect upon the validity of the patent, of such purchase, sale, or use prior to the application. The questions involved in the two clauses are quite different. The first clause relates to the particular right of a particular defendant to use a particular machine, manufacture, or composition of matter after the grant of the patent, and notwithstanding its grant, and in no manner relates to the validity or invalidity of the patent. The second clause relates wholly to the validity of the patent.

Most of the authorities laid before us and relied upon on the present application relate entirely to the first clause of the section.

The first case in which the 7th section of the act of 1839 appears to have come under consideration in this court was that of *McClurg* v. *Kingsland*, 1 How. 202, decided in 1843. But that was a case which involved only the first clause of the section. The patent was for an improvement in the mode of casting chilled rollers. It was, therefore, a patent for an improvement in a process. The patentee invented it while he was a workman in the employ of the defendants. They put it into use in their business. He left their employment, and then applied for and obtained his patent. His assignees sued the defendants in an action at law for continuing to use the improvement. There was a verdict for the defendants, upon the ground that, by reason of their unmolested, notorious use of the invention before the application for the patent, they had a right to continue to use it, under the provisions of the first clause of the 7th section. The judgment for the defendants was affirmed by this court upon that ground. It held that the defendants were on the same footing as if they had had from the inventor a special license to use his invention, given before he applied for his patent, and that the first clause of the 7th section extended to the invention or thing patented in that case, although it consisted of a new mode of operating an old machine, as contradistinguished from a patent for a machine. The court distinctly held that the words "newly invented machine, manufacture, or composition of matter," and the words "such invention," in the first clause of the 7th section, meant the invention patented; and that the words "the specific machine, manufacture, or composition of matter" meant the thing invented, the right to which was secured by the patent. We see nothing in this case which sustains the position of the appellants.

The first reported case in a Circuit Court, involving any part of the 7th section, is that of *Pierson* v. *Eagle Screw Co.*, 3 Story, 402, in 1844, in the Circuit Court for the District of Massachusetts, before Mr. Justice Story. That was a case

which involved only the first clause of the section.   The de-
fendant had, prior to the patentee's application for his patent,
purchased the right to use a certain number of machines em-
bracing the patented improvement, from the assignee of an
independent inventor thereof, and claimed the right, under the
7th section, to use the machines which it had actually in opera-
tion, notwithstanding the fact that the patentee was the first
inventor.   The Circuit Court charged the jury, that the first
clause of the 7th section did not confer such right upon the
defendant, because there was no license or consent by the
patentee, as inventor, to the use of the machines by the de-
fendant.   In considering that question, the court observed, in
regard to the second clause of the 7th section, that it limited
the right to apply for a patent to the period of two years after
the inventor had sold his invention or allowed it to be used by
others.   But the second clause was not directly in judgment
in the case.   This observation on the subject appears to have
been the origin of much that has been said on the question in
subsequent cases, for this case of *Pierson* v. *Eagle Screw Co.*
is generally cited as the leading authority in favor of the posi-
tion taken by the appellants.

In *Hovey* v. *Stevens*, 1 Woodb. & Min. 290, in the Circuit
Court for the District of Massachusetts, in 1846, before Mr.
Justice Woodbury, a motion was made for a preliminary in-
junction, on a patent granted to Hovey.   The question arose
whether Stevens did not himself, before Hovey obtained his
patent, discover or construct the patented invention.   The
court considered the question whether Stevens had not ob-
tained a knowledge of Hovey's invention through a workman
in his employ, who had previously been in the employ of
Hovey and had used the improvement, and whether Stevens
did not copy the improvement from Hovey's, without Hovey's
consent, and before Hovey made his machine public or sold it.
The court observed, that, in such a case, the use of the ma-
chine by Stevens, though begun before Hovey obtained his
patent, would be a use by fraud, not contemplated and saved
under the 7th section of the act of 1839.   The question was
solely as to the right of Stevens to continue to use the machine

which he had so begun to use before Hovey obtained his patent. The court declined to determine the question of fact involved, as an action at law, to be tried by a jury, for a violation of the patent, between the same parties, was then pending, and refused to grant the injunction. As appears by the report of the case of *Hovey* v. *Stevens*, 3 Woodb. & Min. 17, 32, the bill in equity was dismissed and the jury case was tried, and the plaintiff was nonsuited upon grounds not involving those considered on the motion for the preliminary injunction.

The next case cited is *Pitts* v. *Hall*, 2 Blatchford, 229, in 1851, in the Circuit Court for the Northern District of New York, before Mr. Justice Nelson and Judge Conkling. In that case the only questions were whether the patentee had forfeited his right to his invention by using it in public more than two years prior to his application, or whether such use by him was only experimental, with a view to further improvements; and also whether he had dedicated or abandoned his invention to the public use. The case in no manner involved the question before us.

In *McCormick* v. *Seymour*, 2 Blatchford, 240, in 1851, in the Circuit Court for the Northern District of New York, before Mr. Justice Nelson, the points involved related wholly to the acts of the patentee himself, more than two years prior to his application, in respect to his own use in public of the patented improvement; and to the question of his abandonment of the invention to the public within the two years. The jury having failed to agree upon a verdict, the case was again tried, and resulted in a verdict and judgment for the plaintiff, thus overruling the defences set up. At December Term, 1853, this court reversed the judgment on the question of damages, but it approved the rulings below on the above points. *Seymour* v. *McCormick*, 16 How. 480.

The case of *Sargent* v. *Seagrave*, 2 Curtis, 553, in 1855, in the Circuit Court for the District of Massachusetts, before Mr. Justice Curtis, involved only the questions, on a motion for a preliminary injunction, of the exclusive possession of the right by the patentee, and the acquiescence of the public therein,

after the issue of the patent, for the period of about two years, and its acquiescence in the claim of the patentee to a right under a caveat, for about two years before the date of the patent.

Then came the case of *Kendall v. Winsor*, 21 How. 322, decided by this court at December Term, 1858. It was a writ of error to the Circuit Court for the District of Rhode Island, where the case was tried before Mr. Justice Curtis and a jury. The suit was an action at law for damages for the infringement of a patent granted to Winsor, who had a verdict and a judgment. The particular question in the case arose wholly under the first clause of the 7th section of the act of 1839. The defendants claimed a right to use certain specific machines under that clause. The application for the patent was made in November, 1854. Prior to that time, the defendants had constructed one machine containing the patented invention, and they constructed others in the autumn of 1854. In the course of that fall, Winsor had knowledge that the defendants had built, or were building, one or more machines like his invention, and did not interpose to prevent them. Winsor had completed in 1849 four machines containing the patented improvements, and had made on them articles which he had sold. But he kept the machines from the view of the public, allowed none of the hands employed by him to introduce persons to view them, and the hands pledged themselves not to divulge the invention. Among those hands was one Aldridge, who left the plaintiff's employment in the autumn of 1852, and entered into an arrangement with the defendants to copy the plaintiff's machine for them, and did so, and the defendants' machines were built and put in operation by Aldridge, and under his superintendence, and by means of the knowledge which he had gained while in the plaintiff's employment, under a pledge of secrecy. On the basis of these facts, the defendants' counsel prayed the court to instruct the jury that, under the 7th section of the act of 1839, if the jury were satisfied that the machines for the use of which the defendants were sued were constructed and put in operation before the plaintiff applied for his patent, then the defendants possessed the right

to use, and vend to others to be used, the specific machines made or purchased by them, without liability therefor to the plaintiff. The court did not grant this prayer, but instructed the jury that, if Aldridge, under a pledge of secrecy, obtained knowledge of the plaintiff's machine, and thereupon, at the instigation of the defendants, and with a knowledge on their part of the surreptitiousness of his acts, constructed machines for the defendants, they would not have the right to continue to use the same after the date of the plaintiff's patent; but that, if the defendants had the machines constructed before the plaintiff applied for his patent, under the belief, authorized by him, that he consented and allowed them so to do, they might lawfully continue to use the same after the date of the patent, and the plaintiff could not recover. It was on this state of the case that the question came before this court. The first clause of the 7th section was the only one involved in the instruction asked for and in that above recited as given. This court affirmed the judgment and the propriety of the action of the Circuit Court. In its opinion, it observed, that inventors were "entitled to protection against frauds or wrongs practised to pirate from them the results of thought and labor;" that "the shield of this protection has been constantly interposed between the inventor and fraudulent spoliator by the courts of England, and most signally and effectually has this been done by this court, as is seen in the cases of *Pennock* v. *Dialogue*, 2 Pet. 1, and of *Shaw* v. *Cooper*, 7 Pet. 292." The opinion of the court treated the case as one in which the rights of Winsor could not be affected, because the knowledge of the invention had been surreptitiously obtained and communicated to the public; and went on to remark that the instruction to the jury at circuit was in strict conformity with that principle, and with the doctrines declared in *Pennock* v. *Dialogue* and *Shaw* v. *Cooper*. It closed the opinion by saying: "That instruction diminishes or excludes no proper ground upon which the conduct and intent of the plaintiff below, as evinced either by declarations or acts, or by omission to speak or act, and on which also the justice and integrity of the conduct of the defendants, were to be examined and deter-

mined. It submitted the conduct and intentions of both plaintiff and defendants to the jury, as questions of *fact* to be decided by them, guided simply by such rules of law as had been settled with reference to issues like the one before them; and upon those questions of fact the jury have responded in favor of the plaintiff below, the defendant in error. We think that the rejection by the court of the prayers offered by the defendants at the trial was warranted by the character of those prayers, as having a tendency to narrow the inquiry by the jury to an imperfect and partial view of the case, and to divert their minds from a full comprehension of the merits of the controversy."

It is thus seen, that this case not only turned upon a right claimed wholly under the first clause of the 7th section, but that it was held that a fraudulent, piratical, and surreptitious purchase or construction of a machine, like that shown in that case, was not such a purchase or construction as was covered by the first clause of the 7th section. The decision in that case does not affect the one now before the court.

It may well be that a fraudulent, surreptitious, and piratical purchase or construction or use of an invention prior to the application for the patent would not affect the rights of the patentee under either clause of the 7th section; but the present is not such a case as that which existed in *Kendall* v. *Winsor.* In the use of driven wells in public, at Cortland, by others than Green, more than two years before his application, we see nothing in the evidence under which such use can properly be characterized as fraudulent, piratical, or surreptitious. Green's invention was made in 1861. The brief of the appellants at the former hearing contained this statement: "But it is not denied that in this case there is proof that after the invention by Green in 1861, and his public exhibition of it in Cortland, the rumor of it spread, and the value of it became apparent, and other persons, without Green's consent and allowance, did put the invention into public use without his knowledge." The application for the patent was made March 17, 1866. It is true that the driven wells thus referred to were constructed, some by Mudge and some by Suggett, who

obtained knowledge of the invention from Green. It is admitted in the appellants' brief on the present application that, subsequently to Green's invention, and more than two years prior to his application, Suggett put down four driven wells, for persons named Copeland, Seaman, Foster, and Samson respectively, and Mudge, five wells, for persons named Pomeroy, Bolles, Bates, Seaman, and Hicks respectively. But there is nothing that indicates in regard to these wells fraud or piracy or surreptitiousness, in the sense of the decision in *Kendall* v. *Winsor.* The invention was made by Green and publicly exhibited, the rumor of it spread and its value became apparent, and the persons for whom the wells so put down were made, had them constructed during the time when, for five years after the invention, Green failed to apply for a patent. Of course, Green, from the moment of the invention, had an inchoate property therein, which he could complete by taking a patent. The first clause of the 7th section of the act of 1839 gave to the persons for whom those wells were constructed a right to use them without the consent of Green, and the second clause of that section had the effect to make Green's patent invalid because of the use of the invention by those persons more than two years before he applied for his patent.

In the case of *Sanders* v. *Logan,* 2 Fish. Pat. Cas. 167, in 1861, in the Circuit Court for the Western District of Pennsylvania, before Mr. Justice Grier and Judge McCandless, the bill was dismissed because the patentee had abandoned his invention, and because it had been publicly used, with his knowledge, consent, and approbation, more than two years prior to the application for the patent.

In the case of *American Hide Co.* v. *American Tool Co.,* 4 Fish. Pat. Cas. 284, in 1870, in the Circuit Court for the District of Massachusetts, before Judge Shepley, the question tried was, whether the invention was in public use or on sale, with the knowledge and consent of the inventor, more than two years before he applied for his patent, and whether he had abandoned his invention to the public prior to his application. On these issues the jury found for the defendants.

In *McMillin* v. *Barclay*, 5 Fish. Pat. Cas. 189, in 1871, in the Circuit Court for the Western District of Pennsylvania, before Judge McKennan, two patents were involved. In regard to one of them, the defence was, that the patentee had himself used the invention in public more than two years before he applied for his patent. It was held that, when it was so used, it was a complete invention, and the patent was held to be invalid. In regard to the other patent, the defence was that of abandonment by the patentee subsequently to the making of his application, the application having been made in 1855, and the patent having been granted in 1867, and the invention having gone into use subsequently to the application. The defence of the abandonment of the invention after the application was filed was overruled.

In *Russell & Erwin Co.* v. *Mallory*, 10 Blatchford, 140, in 1872, in the Circuit Court for the District of Connecticut, before Judges Woodruff and Shipman, the question involved related entirely to an abandonment of the invention and to the effect of the acts of the patentee within two years prior to the application.

In *Jones* v. *Sewall*, 3 Cliff. 563, in 1873, in the Circuit Court for the District of Massachusetts, before Mr. Justice Clifford, it was set up as a defence, that the several improvements covered by the patent sued on were in public use and on sale more than two years before the patentee made his application for the patent. The court overruled the defence, holding that there was no evidence to show that the inventions, or either of them, were in public use or on sale more than two years before the inventor applied for a patent, or for any shorter period, with his consent and allowance, or that he had any knowledge of any such sale or public use at the time it was made; and that, on the contrary, the evidence showed that he never gave his consent to any such sales, and that he constantly asserted that he intended to apply for a patent. The decision was placed upon the ground, that such consent and allowance were necessary to the invalidity of the patent. This was a direct adjudication upon the point involved in the present case.

In *Klein* v. *Russell*, 19 Wall. 433, at October Term, 1873, the defence was want of novelty. The plaintiff had a judgment, which was affirmed by this court. At the trial, the defendant requested the court to charge the jury: " 1st. That the invention, as described in the patent of February, 1870, is the treatment of bark-tanned sheep and lamb skins by the employment of fat liquor, and, if such treatment was known to others, and more than two years before the plaintiff applied for his patent, his patent is void." He also requested the court to instruct the jury: " 7th. That, if fat liquor had been used substantially in the manner specified in the plaintiff's patent, for the purpose of rendering any kind of leather soft and supple, more than two years before the plaintiff applied for a patent, the plaintiff cannot recover, even though it had not been so used in dressing bark-tanned lamb or sheep skins." These instructions were refused, and the failure to give them was alleged as error. The defendant in error contended, in this court, that the first request did not correctly or fully describe the invention; that the employment of fat liquor merely was not the whole of the invention, but that it was the employment of fat liquor in the condition and manner described in the specification; and that the refusal to charge the seventh request was proper.

In regard to the first request, this court said, that the instruction was properly refused, and that it stated inaccurately the rule of law which it involved. The court added: "A patent relates back, where the question of novelty is in issue, to the date of the invention, and not to the time of the application for its issue. The jury had already been sufficiently instructed upon the subject. The instruction assumes that the reissue was for the use of fat liquor, without reference to the point whether it were hot or cold." The court then proceeded to hold, that the two claims of the patent sued on required that the fat liquor should be heated, and that, therefore, the first instruction asked was improper. It is quite apparent that the court considered only the issue of novelty, and that it did not pass upon the question involved in the present case.

The seventh request, like the first, was inaccurate, because it referred to the time of the application, and not to the date of

the invention; and, in regard to the seventh request, the court merely said, that it was satisfied with the rulings of the court below in regard to that request and four others which, it stated, might be "grouped and disposed of together;" and it added, that neither of them required any special remark. We cannot· regard the case of *Klein* v. *Russell* as adjudicating 'the question now presented.

In *Henry* v. *Francestown Co.*, 2 B. & A. Pat. Cas. 221, in 1876, in the Circuit Court for the District of New Hampshire, before Judge Shepley, the defence was the public use and sale of the invention by the patentee more than two years before he .applied for his patent. It was held that the use and sales by him were experimental.

In *Consolidated Fruit-Jar Co.* v. *Wright*, 94 U. S. 92, at October Term, 1876, a patent granted in 1870, on an application made in January, 1868, the invention having been completed in ·June, 1859, was held void, because (1) there was a purchase, sale, and prior use of the invention more than two· years before the application, and (2) at the time of the application the invention had been abandoned to the public. The· sale and· prior use were by the inventor himself. This case· does not adjudge the point here involved.

In *Kelleher* v. *Darling*, 4 Cliff. 424, in 1878, in the Circuit. Court for the District of Massachusetts, before Mr. Justice Clifford, the original patent was issued in 1871, under the act of July 8, 1870, and was divided,' on its subsequent surrender, into two reissued patents. No question arose in the case under· the act of 1839.

So, too, the case of *Henry* v. *Providence Tool Co.*, 3 B. & A. Pat. Cas. 501. in 1878, in the Circuit Court for the District of Rhode Island, before Mr. Justice Clifford, arose under the act of 1870.

In *Draper* v. *Wattles*, 3 B. & A. Pat. Cas. 618, in 1878, in the Circuit Court for the District of Massachusetts, before Judge . Lowell, the original patent was issued in 1869, on an application made in June, 1868. The court held that, under the ·7th section of the act of 1839, the sale or use more than two years prior to the application must have been with the consent or

allowance of the inventor, in order to invalidate the patent,.
and that the patent was not invalidated by the sale by the
inventor more than two years before he applied for his patent
of an article which did not embody the whole of his invention
as subsequently patented. The point involved in the present
case was thus directly adjudged.

In *Bates* v. *Coe*, 98 U. S. 31, at October Term, 1878, the
original patent was issued in 1863. Mr. Justice Clifford, in·
delivering the opinion of the court, stated, that the answer
did not set up·as a defence that the invention had been in
public use or on sale in this country for more than two years
before the application for the patent, and that there was noth-
ing in the record to support that proposition, if it had been
well pleaded. His observation, therefore, citing *Pierson* v.
*Eagle Screw Co.*, 3 Story, 402, that, under the 7th section of
the act of 1839, the public use or sale, in order to defeat the
right of the inventor to the patent, must have been with his
consent and allowance, for more than two years prior to the
application, was an observation made in regard to a point not
in issue or in judgment.

In *Henry* v. *Francestown Co.*, 5. B. & A. Pat. Cas. 108, in
the Circuit Court for the District of New Hampshire, in 1880,
before Judge Lowell, the patent had been granted in 1859, on
an application filed in 1857. On proof that the inventor had,
more than two years prior to his application, sold articles con-
taining his invention, not experimentally, the patent was held
invalid.

In *Graham* v. *McCormick*, 10 Bissell, 39, and 5 B. & A.
Pat. Cas. 247, in the Circuit Court for the Northern District of
Illinois, in 1880, before Judge Drummond, the patent having
been granted in 1868, the question was as to a use· or sale by
the inventor more than two years before his application; and
it was held that, as a matter of fact, the sale and use by him
were experimental.

In *Brickill* v. *The Mayor*, 18 Blatchford, 273, in 1880, in.
the Circuit Court for the Southern District of New York, be-
fore Judge Wheeler, the patent had been· granted in 1868, and
the defendant, the city of New York, set up a·right to use the

invention, which was for the combination of a heating appara-
tus with a steam fire engine, by reason of the fact that the
patentee had made it while in the employ of the Fire Depart-
ment of the city, and had attached it to two of the city fire
engines. The court held, notwithstanding the construction
put upon the first clause of § 7 of the act of 1839 by this court
in *McClurg* v. *Kingsland*, 1 How. 202, that the defendants had
acquired no right beyond the right to use the specific machines
constructed prior to the application for the patent.

In *Campbell* v. *The Mayor*, 20 Blatchford, 67, in 1881, in
the Circuit Court for the Southern District of New York, be-
fore Judge Wheeler, the patent having been granted in 1864,
and the invention having been made, sold, and used by others
than the patentee after he had invented it, and more than two
years before he applied for his patent, but without his consent
and allowance, it was held by the court, that, under the sec-
ond clause of the 7th section of the act of 1839, the public use
and sale having been without the consent or allowance of the
inventor, the patent was not invalid. This was a direct adjudi-
cation upon the point involved in the present case.

In *Davis* v. *Fredericks*, 21 Blatchford, 556, in 1884, in the
Circuit Court for the Southern District of New York, before
Judge Wheeler, the patent having been granted in 1868, the
invention had got into public use and on sale more than two
years prior to the application for the patent, but without the
inventor's consent or allowance. The court held, following
*Campbell* v. *The Mayor*, that the patent was not invalid, thus
adjudging the point in question here.

Reference is also made in the brief for the appellants, to
twelve cases reported in 1 MacArthur's Patent Cases, running
from 1841 to 1859, decided by the judges of the Circuit and
Supreme Courts of the District of Columbia, on appeals from
the Commissioner of Patents; but in none of them was the
point here involved in judgment. In *Heath* v. *Hildreth*, p. 12,
no question arose under the act of 1839. In *Arnold* v. *Bishop*,
p. 27, consent by the applicant to the use of his invention for
more than two years prior to his application was shown. In
*Hunt* v. *Howe*, p. 366, the sale was made by the inventor.

In *Rugg* v. *Haines*, p. 420, the use and sale were with the consent and allowance of the applicant. In *Mowry* v. *Barber*, p. 563, the making and selling were by the applicant. In *Carroll* v. *Gambrill*, p. 581, the applicant was defeated upon the ground of estoppel and of abandonment of the invention. In *Ellithorp* v. *Robertson*, p. 585, he was defeated upon the ground of laches on his part, amounting to abandonment. , In *Blackinton* v. *Douglass*, p. 622, there was public use with the consent of the inventor. This was also the case in *Justice* v. *Jones*, p. 635. In *Wickersham* v. *Singer*, p. 645, there were abandonment by the inventor and consent and allowance by him. In *Savary* v. *Lauth*, p. 691, the applicants were defeated on the ground of laches by them and presumed acquiescence. In *Spear* v. *Belson*, p. 699, it was held that laches and delay on the part of the applicant had caused a forfeiture of his right.

The review we have given of the cases now cited on behalf of the appellants shows no adjudication by this court on the question involved, and a direct adjudication as to the effect of the second clause of the 7th section of the act of 1839, in accordance with that contended for by the appellants, in only four cases in Circuit Courts (not including *Andrews* v. *Carman*). To the contrary effect is the case of *Egbert* v. *Lippmann*, 15 Blatchford, 295, commented on in the former opinion 123 U. S. 270, 271.

It is alleged by the appellants, that this court was in error in stating, as it did in its former opinion, (123 U. S. 269,) that in *Andrews* v. *Carman*, 13 Blatchford, 307, 324, the question of the use of Green's invention by others more than two years prior to his application does not appear to have been raised; that it was in fact raised; and that the inference to the contrary grows out of a clerical error in the published opinion in *Andrews* v. *Carman*. It may be accepted that this is so, but the question of law involved is the very question now under consideration.

It is also alleged that the same question was distinctly raised, in proof and argument, in the interference case between Green and Suggett respecting this invention, and that Green's patent

was thereafter granted, with the understanding in the Patent Office that the Cortland wells now in question had been constructed subsequently to Green's invention and more than two years before his application. But patents are often granted with a view to leaving open, to be decided by the courts, questions which the Patent Office does not deem it proper to adjudicate against the applicant by withholding the patent.

It is also urged, that, in the rules of the Patent Office, promulgated between the time of the passage of the act of March 3, 1839, and the enactment of the act of July 8, 1870, it was made known to applicants for patents that a patent would not be granted if the invention had been in public use or on sale, with the consent and allowance of the inventor, for more than two years before his application. It was undoubtedly true, that such a state of facts was sufficient ground for withholding a patent; but the promulgation and enforcement of such a rule cannot be regarded as having the effect of a judicial or authoritative adjudication of the question under consideration.

The argument sought to be founded upon the various phases assumed by the provisions of the act of July 8, 1870, in its passage through the two Houses of Congress, is very unsafe and unreliable, as a basis of judicial action, particularly when the only inference sought to be drawn is one as to what view Congress took of the act of 1839, in enacting the act of 1870. If any inference is to be drawn on the subject, it can only properly be drawn from the act of 1870 as it stands on the statute book, and that inference is commented on in the former opinion of this court, at page 275 of 123 U. S.

The doctrine invoked by the appellants, that where the meaning of a statute has been settled by judicial construction, that construction becomes a part of the statute, is not applicable to the present case. A question arising in regard to the construction of a statute of the United States concerning patents for inventions cannot be regarded as judicially settled when it has not been so settled by the highest judicial authority which can pass upon the question. The earliest decision of a Circuit Court, directly adjudging the point here involved, was

in 1873. This court has always had jurisdiction to review suits on patents to a specified extent, and that jurisdiction was extended by § 56 of the act of July 8th, 1870, 16 Stat. 207, to writs of error and appeals, in such suits, without regard to the sum or value in dispute. No question arising in any such case, reviewable by this court, can be regarded as finally settled, so as to establish the law for like cases, until it has been determined by this court. This view of the matter has been applied by this court in analogous cases. Thus, in *Wilson* v. *City Bank*, 17 Wall. 473, a decision was made as to the construction of §§ 35 and 39 of the bankruptcy act of March 2, 1867, which, this court said in its opinion, was contrary to the view taken by " a large number of the district judges, to whom the administration of the bankrupt law is more immediately confided." So, too, in *Ex parte Wilson*, (114 U. S. 417,) as to the proper construction of the constitutional provision that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury," and as to what criminal prosecutions required an indictment, and in what an information was allowable, this court said ( p. 425): " Within the last fifteen years, prosecutions by information have greatly increased, and the general current of opinion in the Circuit and District Courts has been towards sustaining them for any crime, a conviction of which would not at common law have disqualified the convict to be a witness." The court cited seven cases in the courts of the United States, besides the one before it, which had adopted such view; but that view was overruled, and a contrary one established.

Nor is this a case for the application of the doctrine, that, in cases of ambiguity, the practice adopted by an executive department of the Government in interpreting and administering a statute is to be taken as some evidence of its proper construction. The question before us, as to the validity of a patent, by reason of preëxisting acts or omissions of the inventor, of the character of those involved in the present case, is not a question of executive administration, but is properly a judicial question. Although it may be a question which, to some extent, may

come under the cognizance of the Commissioner of Patents, in granting a patent, yet, like all the questions passed upon by him in granting a patent, which are similar in character to the question here involved, his determination thereof, in granting a particular patent, has never been looked upon as concluding the determination of the courts in regard to those questions, respecting such particular patent, and. *a fortiori*, respecting other patents.

It is contended for the appellants, that the claim of the Green patent is for a process, being for "the process of constructing wells by driving or forcing an instrument into the ground until it is projected into the water, without removing the earth upward as it is in boring, substantially as herein described;" that the 7th section of the act of 1839 applies only to "a machine, manufacture, or composition of matter;" and that, therefore, that section does not apply to the present case. In addition to the view to the contrary taken by this court in *McClurg* v. *Kingsland*, 1 How. 202, before commented on, it was held by this court in *Beedle* v. *Bennett*, 122 U. S. 71, a suit on this very patent, that the patent covers the process of drawing water from the earth by means of a well driven in the manner described in the patent, and that the use of a well so constructed was, therefore, a continuing infringement, because every time water was drawn from it the patented process was necessarily used.

The most plausible argument presented on the part of the appellants is, that, under §§ 6, 7, and 15 of the act of July 4, 1836, a patent was invalid if the thing invented had been in public use or on sale, with the consent and allowance of the inventor, prior to his application for the patent; that § 7 of the act of 1839 was intended only to limit the effect on the validity of the patent of the acquisition of single specimens of the patented invention; that the interests of purchasers or constructors of such specific articles were the sole objects of that section; that the second clause of the section was intended only to provide that the patentee should hold his right against the general public unless there was proof of abandonment by him, or unless the purchase, sale, or prior use by or to

individuals who had acquired such specific articles, had been for more than two years prior to the application for the patent; that in this respect alone were the provisions of the act of 1836 intended to be modified; and that a defendant, in order to show the invalidity of a patent, under § 7 of the act of 1839, must show that he claims exemption from liability to the patentee because he purchased or constructed a specific article covered by the patent prior to the application therefor, and must show that the invention was abandoned or that the purchase, sale, or prior use, or construction of the specific article occurred more than two years before the application for the patent, and with the consent and allowance of the inventor.

But our views in regard to the proper construction of the 7th section do not admit the soundness of this contention, and were fully set forth in the former opinion.

It is proper to notice the suggestion, that there is no declaration in the 7th section of the act of 1839, that either in the case of an abandonment of the invention, or of the existence, for more than two years prior to the application, of the purchase, sale, or prior use referred to in the second clause of the section, the patent shall be held to be invalid; and the further suggestion, that there is only a hypothetical implication that the patent shall be invalid in the excepted cases. But we cannot so interpret the statute. Under §§ 6, 7, and 15 of the act of 1836, a patent was made invalid if, at the time of the application therefor, the invention had been in public use or on sale, with the consent or allowance of the patentee, however short the time. The second clause of the 7th section seems to us to clearly intend, that, where the purchase, sale, or prior use referred to in it has been for more than two years prior to the application, the patent shall be held to be invalid, without regard to the consent or allowance of the inventor. Otherwise the statute cannot be given its full effect and meaning.

The result of these views is that

*The application for a rehearing is denied.*

ANDREWS v. CONE. Appeal from the Circuit Court of the United States for the District of Minnesota. MR. JUSTICE BLATCHFORD delivered the opinion of the court. This is an appeal by the plaintiffs in a suit in equity in the Circuit Court of the United States for the District of Minnesota, from a decree dismissing the bill. The suit was brought for the infringement of the "driven well" patent which was the subject of the decision of this court in *Andrews* v. *Hovey*, 123 U. S. 267, and in which case an application for a rehearing has just been denied. The decree below in *Andrews* v. *Hovey* dismissed the bill, and this court affirmed it, holding the patent to have been invalid. In the present case there is a written stipulation, filed in this court, signed by the counsel of record here, that this case shall abide the result of the case of *Andrews* v. *Hovey*, in this court, and that the decree and mandate herein shall be the same as the decree and mandate in that case, except that no costs shall be taxed or awarded, or disbursements or officers' fees allowed or awarded, in this case, in favor of or against either party hereto, and that each party shall pay his own costs and disbursements. In accordance with such stipulation,

*The decree of the Circuit Court is affirmed, subject to the above recited provisions of the stipulation.*

Mr. *George F. Edmunds* and Mr. *J. C. Clayton* for appellants.

Mr. *Thomas Wilson* for appellee.