Mr. Justice Shepard
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner of Patents finally rejecting the application of Daniel Draw-baugh for a patent for improvements in telephones, filed July 22, 1880. This application (Serial No. 14,040) was supplemented by others filed from time to time, and the final rejection (of Serial Application No. 126,527) from which the appeal has been taken,-was made December 3, 1891, upon the ground that public use had been made of telephones invented by Thomas A. Edison more than two years before the application was filed.
The facts shown by the record, and the proposition of law arising thereon, are thus stated by the appellant:
“ 1. That the Edison telephone, in its completed condition, exhibited a structure that is covered by the claims of the Drawbaugh application for patent.
“ 2. That for the purposes of this inquiry, Drawbaugh is to be regarded as the prior inventor over Edison.
“3. That Edison’s telephone was invented and put into public use and on sale in this country by Edison as a matter of his own independent invention, and without any knowledge derived from Drawbaugh’s prior invention.
“4. That no telephones were put into public use and on sale in this country for more than two years prior to Draw-baugh’s application, through any knowledge or information derived, directly or indirectly, from Drawbaugh.
“ 5. That Drawbaugh had no knowledge of Edison’s said public use and sale, and did not in any manner consent to, or allow or permit the same.
“6. That Drawbaugh did not unreasonably delay his application after obtaining knowledge that the Edison telephones were in public use and on sale.
*238 “ 7. That Drawbaugh never voluntarily abandoned his invention or dedicated it to the public.
“ Assuming these propositions, the following question of law is presented for adjudication: Does the two years’ public use or sale, without Drawbaugh’s knowledge, consent, allowance or permission, of telephones similar to his, but constructed by another and later inventor, without any knowledge of Drawbaugh’s earlier invention, bar Drawbaugh’s application?”
The answer to this question involves the construction of certain sections of the act of 1870 (16 Stats., 198), “ To revise, consolidate and amend the statutes relating to patents and copyrights.” Section 24 provides for the grant of patents for inventions and discoveries of new and useful arts, machines, etc., “ not known or used by others in this country, and not patented or described in any printed publication in this or in any foreign country before his invention or discovery thereof, and not in public use or on sale for more than two years prior to his application, unless the same is proved to have been abandoned.”
Section 37 reads as follows: “ That every person who may have purchased of the inventor, or with his knowledge and consent may have constructed, any newly invented or discovered machine or other patented article, prior to the application by the inventor or discoverer for a patent, or sold or used one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor.”
Section 61, which specifies the defenses that may be made to an action for infringement of a patent, contains five distinct clauses, the fifth of which reads as follows: “That it had been in public use or on sale in this country for more than two years before his application for a patent, or had been abandoned to the public.”
Considered without regard to previous legislation upon the subject and the decisions thereunder, the words of Sec. 24 seems to afford no room whatever for construction. *239 Their plain import is the creation of a limitation of two years within which a patent for an invention must be applied for after it has gone into public use.
We are asked on behalf of appellant to “ read into ” the. statute the qualifying words, “with his knowledge or consent,” and to give it effect as if these words had been added by .Congress in the enactment thereof.
We hold it to be a sound rule that where the words of an act, or part of an act, are plain and clear, are not inconsistent with the general object, and lead to no absurd result, the courts have no right to refuse their operation, or to limit their effect, by a construction based upon conjecture. The appellant seeks to evade this rule by an argument substantially to this effect:
The original act of 1793 was interpreted by the Supreme Court in Pennock v. Dialogue, 2 Pet., 1, as if the words “with the applicant’s consent or allowance” had been included therein; that the act of 1836 inserted the words “ with the applicant’s consent and allowance”; not to change the law, but merely as declaratory of that already in existence through the decision in Pennock v. Dialogue; that the act of 1839 was merely an addition to the law in force, and its Sec. 7, which omits the words “with the applicant’s consent or allowance,” must be taken as in the nature of a proviso to Secs. 6, 7, and 8 of the act of 1836, and be held merely to omit the declaration of the law in force, without changing its effect; that the act of 1870 was a mere consolidation of the laws in force, and must be given the same interpretation, notwithstanding the rearrangement and separation into different sections of some of the provisions under consideration.
It is true that the act of 1793, under consideration in Pennock v. Dialogue, limited the grant of a patent to the discovery of new and useful arts, etc., “ not known or used before the application,” which words the court said, meant necessarily “ not known or used by the public.’’
We cannot agree with counsel that the point decided in that case was that the statute must be construed in all cases *240 as if it read thus: “ Not known or used before the application with the consent or allowance of the applicant.” It was, however, said by Story, J., who delivered the opinion of the court: “ It is admitted that the subject is not wholly free from difficulties, but, upon most deliberate consideration, we are all of opinion that the true construction of the act is, that the first inventor cannot acquire a good title to a patent, if he suffers the thing invented to go into public use, or to be publicly sold for use, before he makes application for a patent. His voluntary act or acquiescence in the public sale and use is an abandonment of his right, or rather creates a disability to comply with the terms and conditions on which alone the Secretary of State is authorized to grant him a patent.”
Considered by itself, this language may -be. broad enough to sustain the appellant’s contention with respect to the effect of the decision; but considered with reference to the point actually before the court for decision, it is plain that the case does not go to the length claimed for it. The question before the court was the correctness of the following charge to the jury given by the court below: “If an inventor makes his discovery public, looks on and permits others freely to use it, without objection or assertion of claim to the invention of which the public might take notice, he abandons the inchoate right to the exclusive use of the invention to which a patent would have entitled him had it been applied for before such use. And it makes no difference in the principle that the article so publicly used and afterwards patented, was made by a particular individual, who. did so by the private permission of the inventor.” This charge was approved and the judgment for the defendant was affirmed.
Section 7 of the act of 1836 did insert the words, “with the applicant’s consent and allowance,” and this may have been done to give sanction to the interpretation supposed to have been given, without qualification, to the older act in Pennock v. Dialogue. Whether this be correct or not, it is not worth while now to consider, because of the interpreta *241 tion given to the act of 1839 in Andrews v. Hovey, 123 U. S., 267; S. C., 124 U. S., 694.
Section 7 of the amendatory act of 1839 reads as follows: “ And be it further enacted, that every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in such invention; and no patent shall be held to be invalid by reason of such purchase, sale or use, prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use, has been for more than two years prior to such application for a patent.”
In Andrews v. Hovey, the patent had issued under the act of 1839, and the defense to an action for infringement involved the interpretation of the foregoing section. After full consideration originally, as is áhown by the opinion, and upon motion for rehearing, it was held, all the justices concurring, that two years’ public use of an invention, before the application was made, whether with or without the consent of the patentee, rendered the patent invalid.
Having reviewed the earlier patent legislation and many decisions bearing on its construction, Blatchford, J., who delivered the opinion of the court, said: “It is.very plain that, under the act of 1836, if the thing patented had been in public use or on sale with the consent or allowance of the applicant for any time, however short, prior to his application, the patent issued to him was invalid. Then came Sec. 7 of the act of-1839, which was intended as an amelioration in favor of the inventor, in this respect,' of the strict provisions of the act of 1836. The first clause of that section provides for the protection of a'person, who, prior to the application for the patent, purchases or constructs a specific machine or *242 article, and declares that he may use and sell such specific machine or article after the patent is issued, without liability to the patentee. The section does not require, in order to this protection, that the purchase or construction shall have been with the consent or allowance of the person who after-wards obtains the patent, and seeks to enforce it against such purchaser or constructor. The words 1 consent or allowance 5 are not found in the provision. The only requirement is, that the specific machine or article shall have been purchased or constructed at some time prior to the application for a patent. The second clause of the section then passes to consider the effect upon the validity of the patent1 of such purchase, sale, or use prior to the application ’ for the patent, and declares that' ‘ no patent shall be held to be invalid by reason of such purchase, sale or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale or prior use has been for more than two years prior to such application for a patent.’ The expression ‘ such purchase ’ clearly means the purchase from any person, and not merely from the person who becomes the patentee of the machine or article. The expression ‘ such sale or use ’ clearly refers to the use or sale by the person who has purchased or constructed the machine or article, the right to use and sell which is given to him by the first part of the section. That right is given to a person who has constructed the machine or article, as well as to one who has purchased it; and the plain declaration of the second part of the section is, that where the purchase or construction of the machine or article took place more than two years prior to the application for the patent, or where the use or sale by the person who so purchased or constructed the machine or article took place at a time more than two years prior to the application, the patent becomes invalid. It is not possible in any other way to give full effect to the word ‘ constructed ’ in the first part of the section. The word ‘purchased’ and the word ‘constructed’ are used in the same connection, and in con *243 nection with the words ‘ so made or purchased/ which occur afterwards; and the word ‘purchased’ cannot be limited to a purchase from the applicant for the patent, nor can the word ‘ constructed ’ be limited to a construction with the consent and allowance of such applicant, without interpolating into the statute the words ‘ consent or allowance.’ We can find no warrant for doing this. The evident purpose of the section was to fix a period of limitation which should be certain and require only a calculation of time, and should not depend upon the uncertain question of whether the applicant had consented to or allowed the sale or use. Its object was to require the inventor to see to it that he filed his application within two years from the completion of his invention, so as to cut off all question of the defeat of his patent by a use or sale of it by others more than two years prior to his application and thus leave open only the question of priority of invention. The evident intention of Congress was to take away the right (which existed under the act of 1836) to obtain a patent after an invention had for a long period of time been in public use without the consent or allowance of the inventor; it limited that period to two years, whether the inventor had or had not consented to or allowed the public use. The right of an inventor to obtain a patent was, in this respect narrowed and the rights of the public as against him were enlarged by the act of 1839. The language of Sec. 24 of the act of 1870, now Sec. 4886 of the Revised Statutes, is to the same effect, and carries out the policy inaugurated by the act of 1839. It allows a patent to be granted only for an invention which was not in public use or on sale for more than two years prior to the application for the patent, subject to the defense of abandonment within such two years, which is also the requirement of Sec. 61 of the same act; while Sec. 37 of that act requires that a person, in order to have the right to use and sell, without liability, a specific thing made or purchased prior to the application for the patent, shall have purchased it of the inventor or constructed it with his knowledge and consent.
*244 “ In view of the fact that Sec. 37 of the act of 1870 reenacts the first part of Sec. 7 of the act of 1839, with the addition, ex industria, of the requirement, in order to confer the right to use the specific thing in question, that the purchase of it should have been from the inventor, or the construction of it should have been with his knowledge and consent, and of the further fact that Sec. 24 of the act of 1870 re-enacts the second part of Sec. 7 of the act of 1839, and does not contain a requirement that the public use or sale for more than two years prior to the application shall have been with the consent or allowance of the patentee in order to invalidate the patent, it may fairly be said that it was the view of Congress that Sec. 7 of the act of 1839 did not require, as an element, the knowledge, consent or allowance of the applicant.”
The opinion in Andrews v. Hovey has been assailed by counsel with much vigor and force, as going entirely outside the point actually before the court. We cannot concur in that view. It was a suit in equity, and -the entire record was before the court upon the facts as well as the law. It is true that the court might have decided the case upon the ground that there was circumstantial evidence sufficient to show that the public use of the invention had been made with the knowledge and consent of the patentee more than two years before his application was filed, and thus have evaded the point upon which the decision was based.
Both points were involved in the case, and the court chose to rest its judgment upon the construction given the statute, and set a vexed question at rest, rather than upon a state of proof which may not have been clear and satisfactory.
The act of 1870, under which this case arose, was not indeed before, the court, but the interpretation of its meaning expressed in the foregoing extract from the opinion, is the necessary consequence of the reasoning with respect to the effect of the act of 1839; and is all the more reasonable by virtue of the manner in which the provisions of former statutes have been changed and rearranged in said act. The *245 separation (and re-enactment with some additions thereto) of the two parts of Sec. 7 of the act of 1839 into Secs. 24 and 37 of the act of 1870 (R. S., Secs. 4886 and 4899) serves to show it was the intention of Congress that the two years’ limitation should apply to a public use, either with or without the consent or allowance of the applicant for the patent, with even more conclusive force than it does to show “ that it was the view of Congress that Sec. 7 of the act of 1839 did not require, as an element, the knowledge, consent or allowance of the applicant.”
Assuming it to be true, then, as claimed by the appellant, that the public use of the Edison telephone invention was not actually known to Daniel Drawbaugh, until within two years next before his application was filed, and was therefore without his consent or allowance, the bar of the statute nevertheless applied, and the Commissioner of Patents did not err in rejecting the application.

The decision appealed from is therefore affirmed, with costs to the appellee, and this decision is ordered to be certified to to the Commissioner of Patents for his observance.