## In re MARTIN.

### Patent Appeal No. 3378.

Court of Customs and Patent Appeals.
Jan. 28, 1935.

Semmes & Semmes, of Washington, D. C. (Harry H. Semmes, S. Warwick Keegin, and F. Bruce McMullen, all of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 1 to 11, inclusive, of appellant's application upon the ground of public use of the invention for more than two years prior to the filing date of his application, viz., June 14, 1926.

The claims involved in this appeal are all process claims; claim 6 is illustrative of the claims in issue and reads as follows: "6. The process of concentrating ores which consists in agitating a suitable pulp of an ore with a mineral-frothing agent and an alkaline xanthate adapted to co-operate with the mineral-frothing agent to produce by the action of both a mineral-bearing froth containing a large proportion of a mineral of the ore, said agitation being so conducted as to form such a froth, and separating the froth."

The record before us consists principally of a purported stipulation of facts. Throughout the stipulation reference is made to certain exhibits, but none of the exhibits accompanied the stipulation. Reference is also made to certain testimony by giving the numbers of the questions, but no transcript of such testimony accompanied the stipulation. Reference is also made to certain patent applications, viz., Serial No. 115,857, and Serial No. 114,857; but such applications do not accompany the stipulation, nor is there any statement in the stipulation with respect to their contents, although counsel making the stipulation evidently were of the opinion that said patent applications were material to the issues raised by appellant upon this appeal.

The stipulation purports to be made under rule 25, paragraph 3 (e), of the rules of this court. We do not commend its form, and it is questionable whether it complies with said rule respecting some of the issues of fact raised by appellant. However, it is sufficient with respect to one question which we hold is decisive of the case.

The invention may be generally stated as comprising the process of using xanthate, an organic compound, as a flotation agent for the concentration of minerals. The invention is admittedly patentable.

It appears from the stipulation that between March, 1914, and February, 1915, appellant, while in the employ of the Utah Copper Company, made the invention here involved; that he entered the employment of the "Minerals Separation American Syndicate (1913) Ltd." on March 6, 1915, and remained in its employ until July 3, 1926; that "Minerals Separation North American Corporation" is the legal successor of said "Minerals Separation American Syndicate (1913) Ltd." (both of said corporations will be hereinafter referred to as "Minerals Separation"); that on March 6, 1915, appellant entered into an agreement referred to as "Sales Agreement" with Minerals Separation whereby the latter was given an option to purchase for $5,000 all inventions theretofore made by appellant on the treatment of ores, and the subject-matter of the application now on appeal was among the inventions referred to in said agreement. It does not directly appear from the stipulation that this option was ever exercised by Minerals Separation, but it may be inferred, we think, from the entire stipulation, that it was exercised, and appellant's counsel upon oral argument stated that the stipulation should be so construed as such was the fact. Under said sales agreement, according to the stipulation, appellant was to disclose to Minerals Separation all his inventions relative to ore treatment "for the purpose of enabling patent applications to be drawn for such of said inventions or improvements as the company may desire to protect by patent applications," "such patents to be obtained in the name of said Martin."

The sales agreement is not included in the record, other than certain quotations therefrom.

The sales agreement also provided, according to the stipulation, that appellant should not disclose said inventions or file any applications for patents therefor, except through Minerals Separation. It also provided that if " * * * in the opinion of the company Martin's reagents, modified oils, or other chemicals useful for flotation concentration of ores can be successfully and profitably manufactured as a *patented flotation oil or reagent,* the company will do

their best to form a corporation for such manufacture, or to arrange with a suitable corporation or group for the *manufacture* of the same, and the company will pay Martin twenty-five per cent (25%) of the net profits received by the company therefrom." (Italics ours.)

The stipulation also recites that appellant disclosed the invention here involved on March 19, 1915, and August 15, 1915, to officials of Minerals Separation who were responsible for the filing of applications and the securing of patents for the company; that on October 23, 1923, an application for patent was filed in the name of one Keller and one Lewis, which application was subsequently amended to become a sole application by Keller; that Keller was an employee of Minerals Separation; that his application was filed with the assistance of one Higgins, an official of Minerals Separation, who at the time of such filing was entirely familiar with the disclosure made by appellant in 1915; that said Keller assigned to Minerals Separation the patent thereafter issued on said application, but received nothing therefor other than his regular and normal salary; that a patent was issued to Keller upon his said application on September 22, 1925; that appellant did not learn of Keller's application until June or July, 1925, and did not learn that there had been any public use of his invention until the spring of 1925; that when appellant learned of Keller's application he attempted to get his employer, Minerals Separation, "to rectify the wrong done, but met with no success," and he resigned his position with said company on June 3, 1926; that some time subsequent to the filing of appellant's application here involved, an interference, No. 55,642, was declared between the claims of appellant's application and claims of the Keller patent; that on November 12, 1927, Minerals Separation, Keller's assignee, petitioned for public use proceedings with respect to the invention here involved; that appellant in response to said petition alleged that the public use was instigated by appellant's employer and was a surreptitious and fraudulent public use against him (appellant); that testimony was taken in said public use proceeding and it was established that the process here involved was commercially used by the Anaconda Copper Mining Company more than two years prior to the date on which appellant filed his application, and that such use was a public use; that such use was instigated by Minerals Separation.

There is nothing in the stipulation to indicate that any one connected with the Anaconda Company had any knowledge of any fraud upon the part of Minerals Separation, if there was any fraud upon its part, and upon oral argument appellant's counsel conceded that there was no fraudulent use of the invention here involved by the Anaconda Company.

The decision of the law examiner and the decision of the Board of Appeals upon appeal upon said public use proceeding are contained in the record before us, from which it appears that said interference was dissolved upon the ground that appellant's invention had been in public use more than two years prior to the filing date of appellant's application. Both tribunals declined to consider appellant's contention that Minerals Separation fraudulently instigated such public use by the Anaconda Company, said contention being regarded by both of said tribunals of the Patent Office as immaterial, and neither made any finding with respect thereto.

After the dissolution of said interference the examiner, in this ex parte proceeding, finally rejected the claims here involved "upon the ground of public use in accordance with the decision in interference #55,-642."

Upon appeal, this decision of the examiner was affirmed, and from the decision of the Board of Appeals appellant took this appeal to this court.

Appellant's reasons of appeal contain but two assignments, which read as follows:

"(1) The Board of Appeals erred in not considering the fraudulent nature of the use of Martin's invention by his employer, and in not finding that such fraudulent use did not constitute a bar of public use against Martin.

"(2) The Board of Appeals erred in not considering the fraudulent nature of the use of Martin's invention by his employer, and in not finding that such fraudulent use did not constitute a bar of public use against Martin—merely because, as stated by the Board of Appeals, 'As we are not aware of any decision definitely deciding a surreptitious or fraudulent use to be without the prohibitions of the statute, as it now reads, we feel constrained to follow the strict terms of the statute.'"

We would observe that none of the tribunals of the Patent Office found any public use by the employer of appellant, Miner-

als Separation, but they found public use by the Anaconda Copper Mining Company, which company was not the employer of appellant. However, as appellant contends here that the public use by the Anaconda Company was fraudulently instigated by Minerals Separation, and that the Board of Appeals refused to consider such question, we will, for the purposes of this appeal, regard the reasons of appeal as sufficient to raise the question of the materiality of such contention under the conceded facts in the case at bar.

Section 4886, Revised Statutes, 35 USCA § 31, at the time appellant's application was filed, read as follows: "Inventions patentable. Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, *and not in public use or on sale in this country for more than two years prior to his application,* unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor." (Italics ours.)

In 1930 this section was amended in certain respects not affecting the questions here involved.

The provision of said section with which we are concerned is the clause " * * * and not in public use or on sale in this country for more than two years prior to his application. * * * "

It is appellant's contention that, while there was a public use of his invention by the Anaconda Copper Mining Company for more than two years prior to his application, and while such use was innocent upon the part of said Anaconda Company, its use was fraudulently instigated by said Minerals Separation, and that therefore the use by said Anaconda Company was not such a use as the statute contemplates.

Appellant's counsel in their brief frankly state: "This is a case of first instance, the question having never been squarely presented to any court for decision."

The provision here under consideration had its origin, in substantially its present form, in section 7 of the act approved March 3, 1839, 5 Stat. 354. Appellant relies upon certain dicta in decisions of the Supreme Court of the United States, relating to public use prior to the application for patent, rendered under patent laws prior to that of 1839, to support his contention that the two years' public use referred to in the statutes beginning with 1839 does not include a fraudulent use or a use instigated by fraud.

In the case of Andrews v. Hovey, 124 U. S. 694, 8 S. Ct. 676, 680, 31 L. Ed. 557, these prior decisions are cited and reviewed, but the question before us was not involved in said case. In its opinion, however, speaking of the act of 1839, there is stated the following: "It may well be that a fraudulent, surreptitious, and piratical purchase or construction or use of an invention prior to the application for the patent would not affect the rights of the patentee under either clause of the seventh section. * * * * "

In said case the court found neither fraud nor surreptitious use of the invention there involved, and therefore the above-quoted language from its opinion was dictum. The court concluded its opinion in said case with the following: " * * * The second clause of the seventh section [the two year clause] seems to us to clearly intend that where the purchase, sale, or prior use referred to in it has been for more than two years prior to the application the patent shall be held to be invalid, without regard to the consent or allowance of the inventor. Otherwise the statute cannot be given its full effect and meaning."

The case of Eastman v. Mayor, etc., of City of New York, 134 F. 844, 854, decided by the Circuit Court of Appeals, Second Circuit, was an infringement suit involving a patent issued under said act of 1839. One of the defenses urged was that the invention embraced in the patent had been in public use for more than two years prior to the application therefor by the inventor, and was therefore invalid under the seventh section of that act. The complainant there charged, as does the appellant here, that the public use of the invention was a fraudulent use and therefore should not be held to invalidate the patent there involved. As in the case of Andrews v. Hovey, supra, the court found upon the facts that there had been no fraudulent use of the invention against the inventor or his assignee. The court, however, in the Eastman Case reviewed prior decisions of the United States Supreme Court and other federal courts upon the questions of prior public use and surrepti-

tious use, and concluded its discussion of those subjects with the following:

"The question, what constitutes a fraudulent, piratical or wrongful appropriation, sale or use of the invention, is left very much as the earlier authorities leave it, in obscurity. We have been referred to no case since the clear exposition of the law in Andrews v. Hovey where a plain case of public use earlier than two years before the application for the patent has been held to be ineffectual as a defense because the use was surreptitious. When the question is fairly presented it may be that the courts will hesitate to introduce exceptions to the rule as broadly stated by the Supreme Court, with the confusion and uncertainty incident thereto.

"If it be once understood that the object of the act 'was to require the inventor to see to it that he filed his application within two years from the completion of his invention, so as to cut off all question of the defeat of his patent by a use or sale of it by others more than two years prior to his application,' the courts will no longer be vexed by the perplexing questions which must frequently arise when the intent of the user and the bona fides of the use are questions to be determined on oral testimony. Isolated instances of injustice to inventors may result, but the remedy is certain and sure. The inventor is master of the situation and has it in his power by prompt action to make the defense of prior public use impossible. Surely two years after he has completed his invention is ample time in which to file his application. If he fails to take so simple and reasonable a precaution why should it not be said that the risk is his and that he cannot complain of the consequences of his own supineness?"

After careful research we have been unable to find any authoritative decisions upon the question of whether a fraudulent public use of an invention for more than two years prior to the filing of an application for patent for such invention, or such public use of an invention instigated by fraud, bars the issuance of a patent upon said application, or renders void a patent if issued.

We do not find it here necessary to decide whether a fraudulent use of an invention for more than two years prior to an application for a patent therefor bars the issue of a patent upon such application under the provision of said section 4886, Revised Statutes (35 USCA § 31). We here use the words "fraudulent use" in the sense that the *user* of the invention is guilty of fraud, or at least has knowledge of fraud perpetrated against the inventor. In the case at bar it is established that the use of the invention by the Anaconda Company was not fraudulent and there is nothing in the record to indicate that it had any knowledge that any rights of appellant had been violated, if any had been violated. Had the use here established been a use by Minerals Separation, a different question would have been presented, concerning which we need here express no opinion.

It is our opinion that, whatever the correct rule may be with respect to a fraudulent use by another of an invention for more than two years prior to the filing of an application for patent therefor, there is no implied exception in the two-year provision removing the bar of the statute where there is a public use of an invention by an innocent user for more than two years prior to the application for patent. In other words, we hold that any public use of an invention, which is not fraudulent upon the part of the user, for more than two years prior to the application for patent for such invention, bars the issue of a patent upon such application.

We think that when Congress provided a two-year period within which the inventor should not be held to be barred by public use, but that any public use for more than two years prior to the application should be a bar, it did not intend to imply an exception to the effect that an innocent public use for more than two years prior to the application should not be within the bar of the statute because some one with whom the user has innocently dealt may have been guilty of fraudulent conduct against the inventor.

To hold that in such a case as the one at bar the two-year public use provision did not apply because of the conduct of Minerals Separation would, in principle, open wide the door to the granting of patents for inventions which had long been in public use if it appeared that communication of the invention to the public had been originally made by one who had betrayed some trust, or violated some duty to the inventor requiring him to keep the invention secret; such conduct being without the knowledge of the user.

█ An inventor has two years from the time of the completion of his invention to file an application for a patent therefor without

956

being subject to the bar of public use. In the case at bar, appellant did not file his application until more than eleven years after he asserts he completed his invention. It is stipulated that he had knowledge of public use of his invention for more than one year prior to his application. It is true that it appears from the stipulation that in 1915 he entered into a contract with Minerals Separation agreeing to convey to it the invention here involved, together with other inventions, upon certain conditions, and that in said contract he agreed that he would file no applications for patent upon his said inventions except through Minerals Separation. This, however, was appellant's voluntary act and affords no excuse for his not filing or causing to be filed an application for patent in time to avoid the bar of public use.

Appellant's counsel, in his brief and upon oral argument, has treated the case before us as a contest between appellant and Minerals Separation. It is not such; this is an ex parte proceeding in which the Commissioner of Patents represents the public. Whatever rights appellant may have against Minerals Separation, or whatever defenses Minerals Separation may have against the asserted rights of appellant under the contract between them, cannot be determined by us in this ex parte proceeding, and we express no opinion with respect thereto.

It may be that in the interference proceeding between appellant and Keller, whose patent was assigned to Minerals Separation, said Minerals Separation should have been held to be estopped to bring a public use proceeding. But even so, and as to this we express no opinion, after the evidence was taken and public use established as hereinbefore set forth and the interference was dissolved, it clearly was proper in this ex parte proceeding for the Patent Office tribunals, representing the public, to take cognizance of such public use of the invention established in the interference proceeding.

Inasmuch as it is an established fact that there was a public use of the invention here involved for more than two years prior to appellant's application, and further that such use was without fraud upon the part of the user, Anaconda Copper Mining Company, the Board of Appeals did not err in affirming the rejection by the examiner of appellant's claims here involved, and its decision is affirmed.

Affirmed.