## LORENZ et al. v. COLGATE–PALMOLIVE–PEET CO.

### Nos. 9331, 9334.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 3, 1947.
Decided April 1, 1948.

Malcolm Wilson, of White Plains, N. Y. (D. Barlow Burke, of Philadelphia, Pa., on the brief), for Lorenz and Wilson.

Frank E. Barrows, of New York City (Wall, Haight, Carey & Hartpence, of Jersey City, N. J., and Pennie, Edmonds, Morton & Barrows and R. T. McLean, all of New York City, on the brief), for Colgate-Palmolive-Peet Co.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

This is the second time that this litigation has been before us. In the District Court Lorenz and Wilson (Lorenz), persons interested in Lorenz Patent No. 2,084,446, one of two interfering patents, brought suit under R.S. § 4918, 35 U.S.C.A. § 66, against Colgate-Palmolive-Peet Company (Colgate), the owner of the other interfering patent, Ittner, No. 1,918,603. The complaint prayed for an adjudication that Lorenz was the first and original inventor of the process disclosed in his patent, that the Lorenz patent was valid and that the Ittner patent was void. Colgate filed an answer and a counterclaim praying for a judgment

that Ittner was the inventor of the process disclosed, that his patent was valid and that the Lorenz patent was invalid. Both patents cover a process for the manufacture of soap and the recovery of glycerine. The patents were in interference within the purview of R.S. § 4918 for the nineteen claims of Lorenz's patent were copied verbatim from Ittner's patent.

The interference between Lorenz and Ittner in the Patent Office arose under the following circumstances. Lorenz had filed an application for his process in the Patent Office on January 24, 1920. Shortly thereafter he communicated the substance of the disclosures of his application to Ittner, who was Colgate's chief chemist, in order that Colgate might exploit the process if it so desired. After examination Ittner expressed himself as uninterested in the process. Next, the Patent Office rejected Lorenz's application and he abandoned the prosecution of the application. On July 18, 1933, Patent No. 1,918,603 was issued to Ittner on an application filed by him on February 19, 1931. Lorenz, learning of the Ittner patent, filed a petition in the Patent Office to revive his original application. This petition was rejected. On November 8, 1934, more than a year after the issuance of the Ittner patent, Lorenz filed a new application in which he adopted as his own nineteen claims of Ittner's patent, asserting that the subject matter of Ittner's patent had been disclosed by him to Ittner in 1920. The Patent Office declared an interference. The examiner of interferences decided in Lorenz's favor and for reasons which need not be gone into here no appeal was taken.

The court below decided that even if Ittner's process for the manufacture of soap and the recovery of glycerine was patentable the evidence did not prove that the process had been appropriated by Colgate from Lorenz. Lorenz v. Colgate-Palmolive-Peet Co., D.C., 34 F.Supp. 315. Reversing the decision, we concluded that the decision of the examiner awarding priority of inven-

tion to Lorenz over Ittner in respect to the first nineteen claims followed "as a necessary consequence under the undeniable facts." We stated in this connection, "It cannot be seriously disputed that Lorenz disclosed to Ittner in January 1920 his patent application, which Ittner had ample time to study and absorb." See 122 F.2d 875, at page 880. We held that the District Court had misconstrued the rule of Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, in that there was no justification in the evidence for overruling the examiner's finding awarding priority of invention to Lorenz. We remanded the case in order that the court below might pass upon the defense of invalidity on the grounds asserted by Colgate. In so doing we called specific attention to the language of R.S. § 4918 providing that "the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either or both of the (interfering) patents void in whole or in part, upon any ground. * * *"

On remand the court below held among other things [1] that "the process of the patent, measured by the commonly accepted criteria, was an invention within the meaning of the statute" but that the patent was invalid because of prior public use. 60 F. Supp. 824, 826, 827. Lorenz appealed. Colgate has appealed from the refusal of the trial court to hold Ittner's patent valid.

We proceed immediately to an examination of the defense of prior public use. R.S. § 4886, Title 35 U.S.C.A. § 31, provided at the time of Lorenz's second application, viz., on November 8, 1934, as well as at the time of the issuance of the patent on that application, viz., June 22, 1937, as follows: "Any person who has invented or discovered any new and useful art, * * * or any new and useful improvement thereof, * * * *not known or used by others in this country, before his invention or discovery thereof,* and not patented or described in any printed publication in this or

---

[1] The court below held also that the claims of Lorenz's patent save claims Nos. 16 and 17, were valid over the prior art. It held that claims Nos. 16 and 17 having to do with specific claims for the recovery of glycerine, had been anticipated. It ruled also that Lorenz had not abandoned his invention, although he had abandoned his original application. Under the view that we take, it is unnecessary to discuss these points of the case.

any foreign country, before his invention or discovery thereof, *or more than two years* prior to his application, *and not in public use* or on sale in this country for more than two years prior to his application, * * * may, * * * obtain a patent therefor." [2,3]

The court below found that: "It clearly appears from the undisputed testimony and the documentary evidence offered in support thereof that the process of the patent was in public use in the factory of the defendant from November 1931 until November 1932, approximately one year, but more than two years prior to the Lorenz application of November 8, 1934. This use was preceded by several months of experimentation, but commercial production of soap and glycerine by the process of the patent was accomplished in November of 1931 and continued thereafter until 1932, when the use of the process was either discontinued or abandoned. This public use, although it did not enrich the art, was sufficient under the statute to preclude the issuance of a valid patent." [4]

We have carefully examined the evidence in the case at bar and have perused not only the transcript but the numerous physical exhibits as well. Agreeing with Lorenz that under the peculiar circumstances of this case an unusually heavy burden rests upon Colgate in order to prove prior public use, we have made generous allowance for the difficulties which Lorenz encountered in procuring evidence to rebut Colgate's proof of prior public use. But we cannot say that the court below erred in finding that the process of Lorenz's patent was in public use in Colgate's plant for a period of a year more than two years preceding the filing of Lorenz's second patent application on November 8, 1934. We are not the trier of the facts but if we were we would feel compelled to make the same finding as did the court below.

We come then to the question whether the public use under the circumstances was such as to be within the purview of R.S.

§ 4886. Lorenz contends that it was not such a use; that Congress did not intend the provision of the statute to bar the grant of a valid monopoly to an inventor whose disclosures have been "pirated" by the person to whom he confided them. The court below made no finding on this point. We ruled in the earlier appeal, as has been stated, that Ittner followed the disclosures made to him by Lorenz in 1920 and that the award of priority to Lorenz by the Patent Office necessarily followed that undeniable fact. 122 F.2d at pages 879-880. The examiner of interferences had said, after referring to the circumstances under which Lorenz had communicated his invention to Ittner: "It is clear therefore since Ittner saw a copy of the earlier [Lorenz's] application that he is not the original inventor of [the claims contained in] Counts 1 to 19." Under all the circumstances and in the light of the documentary and uncontradicted evidence the conclusion is inevitable that Ittner did appropriate Lorenz's process for the benefit of Colgate and that if a finding to such effect had been made by the court below it would have found full support in the evidence. For the purposes of the appeals we will treat the case as if an express finding had been made by the court below that Ittner appropriated Lorenz's disclosures made by the latter to him in 1920.

Colgate asserts that its use was neither fraudulent nor piratical and that the disclosures made by Lorenz to Ittner in 1920 carried no pledge, express or implied, that Ittner or Colgate should not make use of Ittner's invention; that Lorenz had filed a patent application and that Ittner knew this and that otherwise Ittner would have refused to receive the disclosures; that since these were made under a then pending application Ittner and Colgate were at liberty to make use of Lorenz's process and answer to Lorenz in a patent infringement suit for profits or damages; that no confidential or trust relationship in Lorenz's favor was or could be imposed on either Ittner or Colgate under the circumstances. We are aware

[2] Emphasis added.

[3] The Act of August 5, 1939, c. 450, § 1, 53 Stat. 1212 substituted "one year" for "two years" in two places in the statute.

[4] See 60 F.Supp. at page 827, and the third finding of fact.

of the ordinary practice under which manufacturers refuse to receive an inventor's disclosures unless there is a pending patent application which covers the discovery. This proper practice is one which usually inures to the benefit of both inventor and manufacturer since it settles in written terms the nature of the disclosure and lessens the probability of future disputes. In the case at bar, however, Ittner immediately rejected Lorenz's disclosures as commercially impractical only to make substantial commercial use of them some eleven years later. The circumstances of the instant case are therefore unusual and reflect a very different pattern from that which customarily ensues when an inventor makes a disclosure to a manufacturer. Usually if the manufacturer declares himself interested in the process a contract is drawn up whereby the rights of the parties are fixed for the periods of manufacture both prior to the issuance of the patent as well as thereafter. No such opportunity was given to Lorenz in the case at bar because of Ittner's rejection of the process as soon as it had been disclosed to him.

We do not doubt that Lorenz's disclosures were made to Ittner with the implicit understanding that if Ittner was to make use of them an arrangement was to be effected whereby Lorenz was to be compensated. Certainly Lorenz was not offering his process to Ittner gratis. Under these circumstances we cannot say that an inventor may not invoke the aid of a court of equity to impose an accounting on the manufacturer, provided the inventor moves to protect his rights with reasonable promptness. Cf. Bohlman v. American Paper Goods Co., D.C.N.J., 53 F.Supp. 794. We have found no case which is on all fours with the circumstances at bar but a helpful analogy is supplied by Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 922-924. In this case Hoetlke disclosed his invention to Kemp after he had filed an application but before the issuance of a patent to him Kemp made use of the device, claiming to have developed it independently. The court had no difficulty in holding Kemp liable. It stated, 80 F.2d at page 923: "It would be a reproach to any system of jurisprudence to permit one who has received a disclosure in confidence to thus appropriate the ideas of another without liability for the wrong." See also Chesapeake & O. R. Co. v. Kaltenbach, 4 Cir., 95 F.2d 801, and Booth v. Stutz Motor Car Co. of America, 7 Cir., 56 F.2d 962. We think it clear that Ittner received the disclosures cum onere and that Colgate cannot now be heard to assert that it owes no duty to Lorenz.

But Colgate's position in this regard is not really an issue in the instant case. The scope which Congress intended the public use statute to have is the important question. Here the defense of prior public use in reality is asserted on behalf of the public, albeit by Colgate. Was it the intention of Congress that public use by one who employs a process in breach of a fiduciary relationship, who tortiously appropriates it or who pirates it, should bar the inventor from the fruits of his monopoly? Lorenz asserts that there is no case in point and that the question is an original one. He relies on certain cases beginning with Pennock v. Dialogue, 1829, 2 Pet. 1, 7 L.Ed. 327. These and other authorities indicate what should be the nature of our decision in the instant case.

In the Pennock case the Supreme Court had before it the 1793 Act which authorized the issuance of patents on inventions " * * * not known or used before the application * * *", 1 Stat. 319, and also the 1800 Act, which contained a proviso declaring "that every patent which shall be obtained pursuant to this act, for any invention * * * which it shall afterwards appear had been known or used previous to such application for a patent, shall be utterly void." See 2 Stat. 38. The inventors had discovered a process for making tight leather tubes or hose and had entered into an arrangement whereby a manufacturer should make them for sale to the public. The manufacturer employed the process for about seven years and had manufactured some eighteen thousand feet of hose before the patent was issued. The Supreme Court held that such a use would bar the issuance of a patent. Mr. Justice Story wrote the opinion which contains dicta on which Lorenz strongly relies. The

most potent of these are set out in 2 Pet. at pages 20 and 21, 7 L.Ed. 327. Mr. Justice Story, in developing his opinion, noted that the English Statute of Monopolies (21 Jac. I, c. 3) contained a clause similar to, although not identical with, the United States Patent Act then before the Supreme Court. After quoting from Coke's commentary on the English clause (3 Inst. 184), Mr. Justice Story concluded that "The use here referred to [in the English statute] has always been understood to be a public use, and not a private or surreptitious use in fraud of the inventor * * *"; "In respect to a use by piracy, it is not clear that any such fraudulent use is within the intent of the statute; and upon general principles, it might well be held excluded"; and, "If the public were already in possession and common use of an invention, fairly and without fraud, there might be sound reason for presuming, that the legislature did not intend to grant an exclusive right to any one to monopolize that which was already common."

In Shaw v. Cooper, 1833, 7 Pet. 292, 8 L.Ed. 689, in which the 1793 statute was again under consideration, an invention for a priming-head and case for a gun had been pirated by a person in a confidential relationship to the inventor who had caused the invention to be manufactured and sold by others who were probably innocent of intentional wrongdoing. This was held to be a public use within the purview of the statute and the Supreme Court took the position that because of the length of the public use the acquiescence of the inventor in the use would be presumed. See Ibid, 7 Pet. at page 321. But Lorenz again relies on a dictum in which the Court said, Ibid. 7 Pet. at page 319, "But there may be cases, in which a knowledge of the invention may be surreptitiously obtained and communicated to the public, that do not affect the right of the inventor [to a patent]."

In Pierson v. Eagle Screw Co., C.C., Fed. Cas. No. 11,156, 19 Fed.Cas. 672, Mr. Justice Story, sitting on circuit, had before him the first clause of Section 7 of the Act of March 3, 1839, 5 Stat. 354, which provided: "That every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture, or composition of matter so made or purchased, without liability therefor to the inventor * * *." In summing up to the jury in a case in which it may be supposed, in view of the language employed by the court, that the alleged infringer may have acquired his knowledge of the inventor's disclosures "* * * by fraud or artifice, or gross misconduct * * *," Mr. Justice Story stated at page 674 at 19 Fed.Cas. that "* * * surely it never could have been the intention of this clause to confer on a fraudulent purchaser, or a purchaser with full notice, a right to use an invention pirated from the original inventor, by wrong."

In Kendall v. Winsor, 1858, 21 How. 322, 16 L.Ed. 165, the inventor did not patent his machine because, allegedly, he desired to perfect it. The case turned again on the interpretation of the first clause of Section 7 of the 1839 Act, the inventor having sued one who had used the machine for a considerable period before an application was filed by the inventor for a patent. It is not clear from the opinion whether the use was or was not a fraud on the inventor but the Supreme Court upheld an instruction by the trial judge to the jury that if knowledge of how to construct the infringing machine was procured in fraud of the inventor, the infringer was not protected by the statute.

In Klein v. Russell, 1874, 19 Wall. 433, 22 L.Ed. 116, the Supreme Court passed upon the propriety of a ruling by the trial court in a patent infringement case where a process for the treatment of leather had been pirated and prior public use was asserted as a defense. The defendant, who had appropriated the process, had been asked on cross-examination whether the inventor had come to him and forbidden any use by him. There was an objection and the question was allowed by the trial judge. The Supreme Court held that the trial court's ruling was a proper one. The statute involved was Section 13 of the Act of July 4, 1836, 5 Stat. 122, which provided for the reissuance of a patent invalid by

reason of a defective specification. The period of time involved in the public use does not appear clearly. We think it was of many years duration, however, and certainly had occurred long prior to the application for a patent by the inventor. The decision, therefore, seems to be a ruling to the effect that a public use by a pirate is insufficient to bar the inventor from a patent.

In Andrews v. Hovey, 1887, 123 U.S. 267, 270, 8 S.Ct. 101, 31 L.Ed. 160, in which the so-called "driven-well" patent was in issue, it appeared that the public use had been with the inventor's consent. The second clause of Section 7 of the 1839 Act was before the Court. This clause is as follows: " * * * no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public; or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent." The decision is of interest in the instant case principally because the Supreme Court quoted with approval, 123 U.S. at page 270, 8 S.Ct. at page 103, 31 L.Ed. 160, a statement of the District Court of the Southern District of New York in Egbert v. Lippmann, Fed.Cas. No. 4306, 8 Fed.Cas. 370, affirmed 104 U.S. 333, 26 L.Ed. 755, that " * * * the inventor must apply for his patent within two years after his invention is in such a condition that he can apply for a patent for it, and that if he does not apply within such time, but applies after the expiration of such time, and obtains a patent, and it appears that his invention was in public use at a time more than two years earlier than the date of his application, his patent will be void, even though such public use was without his knowledge, consent, or allowance * * *." On rehearing, 1888, 124 U.S. 694, 8 S.Ct. 676, 31 L.Ed. 557, the Supreme Court reviewed most of the pertinent decisions and reiterated the dicta from Pennock v. Dialogue, Shaw v. Cooper, Kendall v. Winsor, quoted or referred to above, reaching the conclusion that the inventor was barred by a prior public use which had been authorized by him. The Court stated,

Ibid. 124 U.S. at page 708, 8 S.Ct. at page 680, 31 L.Ed. 557, "It may well be that a fraudulent, surreptitious, and piratical purchase or construction or use of an invention prior to the application for the patent would not affect the rights of the patentee under either clause of the seventh section; but the present is not such a case as that which existed in Kendall v. Winsor." But the Court said also that "The second clause of the 7th section seems to us to clearly intend that, where the purchase, sale, or prior use referred to in it has been for more than two years prior to the application the patent shall be held to be invalid, without regard to the consent or allowance of the inventor. Otherwise the statute cannot be given its full effect and meaning."

In Eastman v. Mayor of New York, 2 Cir., 1904, 134 F. 844, 854, Judge Coxe reviewed at length the law of prior public use and many of the authorities relating thereto. In this case the invention was a flow-back device on a fire engine pump. The inventor had put the device on a number of machines and had exhibited them publicly both at exhibitions and fires for several years before he applied for his patent. Certain language employed by Judge Coxe, albeit dicta, is strongly suggestive of the decision which we should reach in the case at bar. He said: "The question, what constitutes a fraudulent, piratical or wrongful appropriation, sale or use of the invention, is left very much as the earlier authorities leave it, in obscurity. We have been referred to no case since the clear exposition of the law in Andrews v. Hovey, where a plain case of public use earlier than two years before the application for the patent has been held to be ineffectual as a defense because the use was surreptitious. When the question is fairly presented it may be that the courts will hesitate to introduce exceptions to the rule as broadly stated by the Supreme Court, with the confusion and uncertainty incident thereto." And further, "If it be once understood that the object of the act 'was to require the inventor to see to it that he filed his application within two years from the completion of his invention, so as to cut off all question of the defeat of his patent by a use or sale

of it by others more than two years prior to his application,' the courts will no longer be vexed by the perplexing questions which must frequently arise when the intent of the user and the bona fides of the use are questions to be determined on oral testimony. Isolated instances of injustice to inventors may result, but the remedy is certain and sure. The inventor is master of the situation and has it in his power by prompt action to make the defense of prior public use impossible. Surely two years after he has completed his invention is ample time in which to file his application. If he fails to take so simple and reasonable a precaution why should it not be said that the risk is his and that he cannot complain of the consequences of his own supineness?" See Ibid. 134 F. at page 854.

The last case of any pertinency on this subject is In re Martin, 1935, 74 F.2d 951, a decision of the Court of Customs and Patent Appeals. The inventor, Martin, had developed a minerals-flotation process which he communicated to Minerals Separation North American Corporation by whom he was employed after he had made his discovery. Anaconda Copper Mining Company gained knowledge of Martin's process and employed it commercially. Anaconda was held to be an "innocent user," that is to say, it was not proved that Anaconda had knowledge that Minerals Separation had appropriated the process from Martin. The pertinent statute was R.S. § 4886, the time limitation being then two years. The court stated, 74 F.2d at page 955, that: "* * * we hold that any public use of an invention, which is not fraudulent upon the part of the user [Anaconda], for more than two years prior to the application for patent for such invention, bars the issue of a patent upon such application." The tribunal went on to say, however, that it did not find it necessary to decide "* * * whether fraudulent use of an invention for more than two years prior to an application for a patent therefor bars the issue of a patent * * *." It also stated that: "We here use the words 'fraudulent use' in the sense that the user of the invention is guilty of fraud, or at least has knowledge of fraud perpetrated against the inventor. In the case at bar it is established that the use of the invention by the Anaconda Company was not fraudulent and there is nothing in the record to indicate that it had any knowledge that any rights of appellant had been violated, if any had been violated. Had the use here established been a use by Minerals Separation, a different question would have been presented, concerning which we need here express no opinion."

■■ On consideration of these authorities, and we can find no others even as pertinent, and weighing the policy embodied in the statute we are forced to the conclusion that the decisions of the Supreme Court in Klein v. Russell and in Andrews v. Hovey on rehearing, and that of the Circuit Court of Appeals for the Second Circuit in Eastman v. Mayor of New York, all cited above, point the way to the ruling which we must make on this point. The prior-public-use proviso of R.S. § 4886 was enacted by Congress in the public interest. It contains no qualification or exception which limits the nature of the public use. We think that Congress intended that if an inventor does not protect his discovery by an application for a patent within the period prescribed by the Act, and an intervening public use arises from any source whatsoever, the inventor must be barred from a patent or from the fruits of his monopoly, if a patent has issued to him. There is not a single word in the statute which would tend to put an inventor, whose disclosures have been pirated, in any different position from one who has permitted the use of his process.[5] The Supreme Court in its opinion in Andrews v. Hovey on rehearing put the matter succinctly when, in referring to the second clause of Section 7 of the 1839 Patent Act, it said that it was the Congressional intent that the patent should be held to be invalid "without regard to the consent or allowance of the inventor," if there had been a prior public use within the terms of the statute. The second clause of Section 7 of the 1839 Act was in fact the progenitor of R.S. § 4886. A statement very similar to that of

---

[5] We can find no legislative history which tends to support Lorenz's position and none has been cited to us.

Andrews v. Hovey was made by the District Court in Egbert v. Lippmann, as has been pointed out. As Judge Coxe said in the Eastman case, isolated instances of injustice may result if the law be strictly applied, but the inventor's remedy is sure. He is master of the situation and by prompt action can protect himself fully and render the defense of prior public use impossible: "If [the inventor] fails to take so simple and reasonable a precaution why should it not be said that the risk is his own and that he cannot complain of the consequences of his own supineness?" Moreover, it is apparent that if fraud or piracy be held to prevent the literal application of the prior-public-use provision a fruitful field for collusion will be opened and the public interest which R.S. § 4886 is designed to protect will suffer. While we cannot fail to view Lorenz's predicament with sympathy, we may not render our decision on such a basis. For these reasons we hold, as did the court below, that the Lorenz patent is void by reason of prior public use.

■ As we have stated, Colgate has appealed because the trial court refused to hold Ittner's patent valid. The validity of Ittner's patent was adjudicated adversely to Colgate by our decree in the first appeal when we held, reversing the court below, that Lorenz was entitled to assert priority of invention. The only issue presented for adjudication on remand to the court below was the issue of validity of the Lorenz patent. If our prior decision was wrong, Colgate should have taken the steps necessary to secure review. Since it failed to do this our decision is now the law of the case. We could, of course now change it but no cogent reason has been advanced why we should do so. It is clear that if there was an invention it was Lorenz's and not Ittner's.

The judgment of the court below will be affirmed.